## 27695. HARRINGTON *v.* HULSEY *et al.*

DECIDED OCTOBER 12, 1939.

*W. V. Lance, Oliver & Oliver,* for plaintiff in error.
*Charles J. Thurmond, Wheeler & Kenyon,* contra.

SUTTON, J. On February 5, 1930, John M. Hulsey and Mrs. Mary D. Neese leased to John C. Harrington by written contract effective July 15, 1930, a certain store building in the City of Gainesville, Georgia, for a period of five years at $87.50 per month for the first three years and $90 per month for the remaining two years. On July 29, 1935, Hulsey and Mrs. Neese brought suit in the city court of Hall County to recover $1290 as the balance due under the contract after allowing credit for the amount for which the premises had been relet after the abandonment of the contract by the defendant. It was alleged in paragraph 3 that the defendant had abandoned the contract and refused to pay the rent according to its terms. The defendant answered that he refused to pay the rent, and, not having denied that he had abandoned the contract, his answer must be taken as an admission of the truth of the allegation. It was further alleged in the petition, that the plaintiffs had previously taken out a distress warrant against the defendant for rent due by the defendant to March 1, 1933, and caused a levy to be made on certain property of the defendant, to which action the defendant had filed a counter affidavit denying liability and by cross action seeking to recover damages as recoupment from the plaintiffs; and that a jury in the superior court of Hall County returned a verdict in favor of the plaintiffs in the amount of $618.41. These allegations were admitted as true by the defendant. The petition further alleged that the verdict and judgment in the distress warrant proceeding constituted an adjudication between the parties as to the validity of the contract sued on and the defendant's liability and that they were conclusive as against any breach of the contract by the plaintiffs. In paragraph 9 it was alleged that the defendant without legal justification abandoned the lease contract. The answer of the defendant denied

that he had abandoned the contract without legal justification, but did not deny that he had abandoned the contract, and in other parts of the answer the defendant set up that after occupying the building for two years and fifteen days he abandoned the same for alleged failure of the plaintiffs to make repairs to a roof of the building, which failure, he alleged, constituted a breach of the contract on their part. In another paragraph the petition alleged that the defendant abandoned the contract before the year 1933, since which time he had paid no rent, and these allegations the defendant's answer admitted as true. On the trial of the case verdict and judgment were rendered in favor of the defendant. The plaintiffs by bill of exceptions brought the case to this court where the judgment of the trial court was reversed, this court holding that under the pleadings and the evidence the plaintiffs, as a matter of law, were entitled to recover the full amount sued for and that the verdict for the defendant was unauthorized. *Hulsey* v. *Harrington*, 57 *Ga. App.* 479 (195 S. E. 901).

When the case came on for a second hearing the defendant amended his pleadings by striking therefrom his former admissions that he had abandoned the lease contract and moved from the premises and denied that he had done so, setting up that on or about March 1, 1933, the plaintiffs retook possession of the property, locked the same, and thereafter resumed possession and control, inconsistently with the defendant's right of possession and occupation, without the consent of the defendant, and that thereby he was relieved from all liability under the contract of rental. The defendant admitted a prima facie case, and assumed the burden of proving what he set up in his amendment as a defense. He testified substantially as follows: "I think I occupied the building for a little more than two years. I rented this building with intention of carrying out the contract, and I did everything I could to carry it out. I just don't remember the exact date that I moved out. When I moved out the building was leaking so bad it was damaging a good deal of my stuff. At the time I was in business in the Hulsey building I had a business across the street where I was running a mill. I moved everything across the street except the hay and shucks, which I left in the building. When I went out, as I started to tell you, I left the hay and shucks in there, and of course kept the building and sold the hay and shucks out of it

as long as I had any. Then I put in an order for a car of hay and a car of shucks, expecting to put them in this building. Mr. Hulsey had told me he wouldn't take the building back and expected me to pay rent. I couldn't use it to put groceries in but I could some things by handling them fast. At the time Mr. Hulsey locked his store up I was operating a store across the street about forty feet from this building and immediately in front of it. At that time I had sold out my hay and shucks and had put in an order for a car of each. The first thing I knew Mr. Hulsey came along and put a lock on the door. I countermanded my order for shucks and hay, and he has been in possession of it ever since. After he locked the door I was not able to handle any shucks or hay and discontinued that part of the business because I could not carry it on further. I didn't have room to handle shucks where I had my groceries and flour in the building in which the mill was located. I don't know when Mr. Hulsey locked the door. It was in March, 1933. I can't remember all these dates. I should say it was about the time the distress warrant was taken out. I thought the records already have shown that. I think that he took possession of the store the same year that Mauney moved in. When I had a conversation with Mr. Hulsey about taking this place back he told me he wouldn't take it back. He will tell you that himself. Neither Mr. Hulsey nor Mrs. Neese said anything to me about renting this house to Mr. Mauney. Mrs. Neese told me she wouldn't take the house back. Both of them told me that. I have paid all of the rent until March 1, 1933. That is my recollection as to the time Mr. Hulsey took this property over. I went to Mr. Hulsey and asked him to let me give it up; and he told me that he wouldn't take it, and that it was mine for the full term of the contract. I told him I would like to give it up. The conversation took place at the time I moved out and he took possession. Whatever conversation I had with him took place prior to 1933. I think I moved out in the fall of 1932. Mr. Hulsey never had a lock on the door. That was my lock on the door. When Mr. Terrell moved out he carried his lock with him if he had one. The door was not locked. I never had any possession of it after Mr. Hulsey locked it up about January 1, 1933. It is hard for me to remember the dates. John swore when it was. On the first trial I swore when it was, and whatever I said at that time is true.

Mr. Hulsey was sick in December and was out for some time. When I moved out I guess it was a month may be before I finished selling my hay and shucks, and I did not always keep the door locked across the street because I was working right in front of the building, and lots of times I wanted to send a man over there to get some hay and shucks and I would leave the door unlocked during the day most of the time. When I got the stuff out I didn't leave the door standing open but I left it closed. I couldn't say it stayed closed all of the time. My recollection is that when I moved my flour and can goods across the street I moved the big padlock in place of the small lock I had on there because I didn't feel that the small lock was sufficient on the door with all that stuff in it. I left the building entirely unlocked. I do not remember the date. It was before Christmas, whatever year it was. I expected to lock it up when I got the stuff. I didn't have any talk with Mr. Hulsey after I moved out. It was not necessary to talk to him. He said he was going to hold me responsible for it. Mrs. Neese told me she wouldn't take it back. The building didn't have a lock on it when I took it and it was standing open there. I remember when Mr. Hulsey took out the distress warrant and had it levied. He locked it up about the time he took out the distress warrant."

The plaintiffs introduced in evidence the distress warrant sworn out by them against the defendant for rent alleged to be due on the contract, in the sum of $1090 up to March 1, 1933; the counter-affidavit filed by the defendant, the substance of which was a denial of liability for the rent alleged to be due and unpaid, and setting up that the plaintiffs had breached the contract and damaged the defendant in a named sum, and that he was relieved from all liability on account of said breach of the plaintiffs in failing to repair leaks in the roof of the building; verdict and judgment in favor of the plaintiffs in the distress warrant proceeding; original answer of the defendant, admitting that the distress warrant was taken against him for rent claimed by the plaintiffs to March 1, 1933, and that it was levied on certain property of the defendant, and as showing that the defendant admitted that he had abandoned the lease contract and had paid no rent thereafter. The court directed a verdict for the plaintiffs. The defendant moved for a new trial on the general grounds, and on special grounds

based on the contention that there was a conflict in the evidence which required that the issue be submitted to a jury, and therefore that it was error to direct the verdict in favor of the plaintiffs. The exception is to the overruling of the motion for new trial.

It is contended in the brief of counsel for the plaintiff in error that, while it is admitted that until the taking out of the distress warrant proceeding for rent to March 1, 1933, the rental contract was still in effect and Harrington was liable as a tenant for rent to that date, he is relieved from all further liability because of what is averred as a breach of the contract by the plaintiffs on or about March 1, 1933. It is further urged that, although the plaintiffs introduced in evidence the admissions of Harrington in his original answer that he had completely and finally abandoned the contract and premises, the testimony given by him on the last trial was such as to make an issue for the jury on the question of abandonment, and therefore that the court erred in directing the verdict for the plaintiffs. But the conflict was as to evidence solely from the tenant, the party defendant, and under the law it must be construed most strongly against him. Opposing the present contention that he ceased to be liable for the rent by reason of an alleged breach of the plaintiffs there was in evidence the former admissions that Harrington had previously abandoned the contract and premises for reasons which he thought justified his act. Such admissions are to be-treated, not as an estoppel against the defendant, but as evidence. *Mims* v. *Jones,* 135 *Ga.* 541, 544 (69 S. E. 824), and cit.; *William Hester Marble Co.* v. *Walton,* 22 *Ga. App.* 433 (4) (96 S. E. 269) ; *Williams* v. *Atlanta National Bank,* 31 *Ga. App.* 212, 220 (120 S. E. 658). The defendant made no explanation whatever as to these admissions, contenting himself with offering testimony to show an alleged breach of the contract on the part of the plaintiffs on or about March 1, 1933, after the time of his admitted abandonment of the contract and premises in the fall of 1932. Construing this evidence from the defendant most strongly against him, as must be done under the law, where it is conflicting and inconsistent, it must be held as a matter of law that the defendant had abandoned the contract and premises before the alleged breach by the plaintiffs on or about March 1, 1933. In these circumstances the landlords were justified in put-

ting a lock on the building to protect the property, and their act of reletting the premises was in the interest of and for the benefit of the tenant and did not discharge him from his obligation to pay rent. *Hulsey* v. *Harrington,* 57 *Ga. App.* 479 (195 S. E. 901). The court did not err in directing the verdict, and in overruling the motion for new trial.

*Judgment affirmed. Stephens, P. J., concurs. Felton, J., concurs in the judgment.*